## DEMPSEY OIL CO., Ltd., v. HUSSEY & WHELAN. (No. 2790.)

(Court of Civil Appeals of Texas. Texarkana. July 2, 1923. Rehearing Denied Oct. 4, 1923.)

1. **Contracts ⟨Key⟩68—Defendant's agreement to pay for gas in drilling well held not without consideration.**

Under contract for drilling by defendant of an oil well "to a depth of 2,500 feet, unless oil in paying quantities shall be found at a less depth," plaintiffs were to furnish the gas for the drilling. Plaintiffs claimed in apparent good faith, when a depth of 2,340 feet was reached, that the oil then struck was in paying quantities, and opposed further drilling. *Held*, that withdrawal of plaintiffs' opposition was a sufficient consideration for the promise then made by defendant to pay for the gas for further drilling.

2. **Contracts ⟨Key⟩233—Defendant under contract to pay plaintiffs for amount of gas used held not liable for penalty incurred by plaintiffs by not paying gas bill when due.**

Under contract of defendant to pay plaintiffs for gas used in completing drilling an oil well, where the gas was obtained by plaintiffs from a gas company, and plaintiffs did not pay the gas bill when due, so as to obtain the discount, plaintiffs could not recover of defendant the added penalty.

3. **Replevin ⟨Key⟩125—Judgment against sureties on replevin bond follows after judgment against principal.**

Foreclosure of attachment lien is not necessary to support judgment against the sureties on the bond for replevy of the attached property, but judgment on the replevin bond follows after judgment against the principal.

Appeal from District Court, Marion County; R. T. Wilkinson, Judge.

Action by Hussey & Whelan against the Dempsey Oil Company, Limited. Judgment for plaintiffs, and defendant appeals. Modified and affirmed.

See, also, 243 S. W. 1116.

The suit was by the appellees to recover $692.72, the price of gas furnished to the Dempsey Oil Company, Limited, during the month of June, 1921, for the purpose of drilling an oil well near Jefferson.

The defendant answered by general denial, and specially pleaded as a defense that the gas was furnished under a written contract, by the terms of which the plaintiffs expressly agreed to furnish the gas and the water to the defendant to perform the work of drilling the well.

Hussey & Whelan and Torrans, on the one part, made a contract with the Dempsey Oil Company, Limited, on the other part, that the Dempsey Oil Company, Limited, was to drill an oil and gas well on certain leased premises. In all the oil and gas produced, the Dempsey Oil Company, Limited, was to have a five-eighths interest, Hussey & Whelan jointly a one-eighth interest, and Paul Torrans and the owner of the land a one-eighth interest each. By the terms of the contract, the Dempsey Oil Company, Limited, was to furnish the rig, all of the necessary drilling apparatus, and the casing, and to bear all the expenses of the labor in drilling, and to do the drilling of the well "to a depth of 2,500 feet, unless oil in paying quantities shall be found at a lesser depth." Hussey & Whelan and Paul Torrans by the terms of the contract were "to move the oil rig of the parties of the second part from the present location on the old Taylor place to a point selected upon the lands covered by the lease above described, to furnish all fuel and water at the boiler necessary for the drilling of the first well on the land covered by the leases above described." The appellees moved the drilling rig to the point selected, and the appellant commenced to drill the well, the appellees furnishing the fuel and water to do so.

The court makes the following findings of facts, viz.:

"(4) I find that upon reaching the depth of 2,340 feet a disagreement arose between the contracting parties as to whether the oil, which was actually struck at that depth, was in paying quantities, as contemplated by the drilling contract, and that Paul Torrans ordered the drilling stopped and shut the gas off and refused to proceed further with his part of the contract until the well should be fully tested and placed on a pump, which was refused by the Dempsey Oil Company, Limited, and the work was brought to a standstill on account of this disagreement.

"(5) I find that at this juncture the Dempsey Oil Company, who was then being represented by Harry Dempsey, went to Mr. Whelan and Mr. Hussey and asked them to turn on the gas so he might proceed to lift his tools out of

the well, which he at that time represented to be lodged in the well, and stated that it would take him two or three days to remove the tools from the well; this was about the 2d or 3d of June, 1921, and they turned on the gas and gave the defendant until the following Monday to remove his tools and ordered the gas turned on until that time, and the gas was turned on.

"(6) I find that on Monday, June 6, 1921, the plaintiff, Hussey & Whelan, ordered the gas cut off, which was done, and afterwards on the same day Harry Dempsey came again to plaintiffs and requested them to turn the gas on again until he could finish the well to a depth of 2,500 feet. At this time Hussey & Whelan instructed Harry Dempsey that they did not want to proceed any further with the drilling; that they believed they had a producing well at 2,340 feet, and requested that the Dempsey Oil Company place a pump on the well at that depth; but the Dempsey Oil Company refused to put the pump on the well, Harry Dempsey stating that he did not think the oil found there was in paying quantities. Hussey & Whelan, however, refused to furnish any more gas to drill the well any deeper. Harry Demsey, for the Dempsey Oil Company, stated to Hussey & Whelan that he wanted to continue drilling the well to a depth of 2,500 feet, and that if they would have the gas turned on to drill the remaining 160 feet that the Dempsey Oil Company would pay for same.

"(7) I find that the gas was being furnished by the Arkansas Natural Gas Company and that Hussey & Whelan had on deposit with said company $1,000 to secure the furnishing of the gas, and on June 6, 1921, the $1,000 was on deposit, and Hussey & Whelan had been paying for all the gas up to this time.

"(8) I find that after Harry Dempsey had agreed for the Dempsey Oil Company to pay for the gas to drill the remaining 160 feet Hussey & Whelan ordered the gas turned on again, which was done and the sum [of] $713.87 worth of gas was consumed by the Dempsey Oil Company, Limited, in drilling the remaining 160 feet, and said gas was paid for by Hussey & Whelan to the Arkansas Natural Gas Company, but said amount has never been paid to Hussey & Whelan by the Dempsey Oil Company.

"(9) I find that there is nothing in the record in this case to show what amount of oil was struck at the depth of 2,340 feet, nor whether it was in paying quantities or not.

"(10) I find that Hussey & Whelan would not have ordered the gas turned on nor paid for same had it not been for the promise of the Dempsey Oil Company that it would pay them for the amount used in completing the remaining 160 feet."

It is admitted that the price of the gas furnished was $692.72. It appears that the gas company allowed a discount of 2½ cents per one thousand cubic feet of gas, provided all bills were paid before or at the date the same were due. The discount here amounted to $28.27.

F. H. Prendergast, of Marshall, and T. D. Rowoll, of Jefferson, for appellant.

Schluter & Singleton, of Jefferson, for appellees.

LEVY, J. (after stating the facts as above). [1] The court concluded, and that conclusion is assailed by appellant, that under the facts proven the appellant should be held liable to pay for the gas used in drilling the well the distance between 2,340 and 2,500 feet, because of the express promise at the time of the appellant to pay for the gas so used. The appellant urges that even if the Dempsey Oil Company, Limited, promised to pay for the gas so used, it would be without consideration and not legally binding. As found by the court the appellant promised to pay for the gas used in drilling the well the 160 feet in controversy at the time and under the following circumstances, viz.:

"Upon reaching the depth of 2,340 feet a disagreement arose between the contracting parties as to whether the oil, which was actually struck at that depth, was in paying quantities as contemplated by the drilling contract."

The appellees were insisting at the time that oil in paying quantities was reached at the 2,340 feet, and the appellant was insisting that oil in paying quantities was not struck at the 2,340 feet drilled. The appellees refused to furnish any more gas to drill the well deeper than the 2,340 feet, because of their insistence that oil in paying quantities was already reached, and the drilling was shut down on that account. The appellant wanted to continue drilling the well to the 2,500 feet depth. Under the contract the appellant was to drill the well 2,500 feet deep "unless oil in paying quantities shall be found at a lesser depth." And under the contract the appellees were to furnish "all fuel necessary for the drilling of the first well." Therefore as between the parties the contract would be fully performed according to its terms in either of two events: (1) When the well was drilled 2,500 feet deep; or (2) when "oil in paying quantities shall be found at a lesser depth." If "oil in paying quantities" was struck at a lesser depth than 2,500 feet, then the appellees were not obligated to furnish any more fuel for drilling. The appellees, having an interest in the well and oil, had also the legal right to have the well as it stood continued, producing "oil in paying quantities." The disagreement, then, between the contracting parties was not, as it appears here, an utterly groundless and unfounded controversy as to the full performance of the contract. Even though ultimately, if so, the contention so made by the appellees could not have legally prevailed, yet nevertheless there existed at the time of the promise by appellant a reasonable opposition made in apparent good faith by appellees and in the exercise of a contractual right to drilling the well any deeper than the 2,340 feet. The rule is well established, it is true, that where a legal obliga-

tion exists a cumulative promise to perform it, unless upon a new consideration, is a nullity. A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound. But the facts, as found by the court, legally furnish a new consideration for the agreement, and not merely a cumulative promise to perform the old contract. A sufficient consideration for the promise of the appellant to itself pay for the gas used to drill the well on to the depth of 2,500 feet was shown when it was made to appear that the appellees agreed to forego their determination to insist and to forbear the exercise of their contractual right to claim that "oil in paying quantities" had already been reached in return for the promise of appellant to pay for all fuel necessary to drill the well deeper. Page on Contracts, § 286; 9 Cyc. pp. 323, and 335; 13 C. J. p. 342; 1 Elliott on Contracts, § 234.

[2] The appellant, however, was not liable for the $28.27 paid by appellees, because the gas bill was not promptly paid when due. That amount is in the nature of a penalty, outside the terms of the contract between the parties to this suit. The duty of the appellees was to pay promptly the gas bill, and then demand payment by appellant to them.

[3] A foreclosure of the attachment lien was not necessary to support a judgment against the sureties on the replevin bond, and judgment on the replevin bond follows after a judgment against their principal. Vogt v. Dorsey, 85 Tex. 90, 19 S. W. 1033; Tripplett v. Hendricks (Tex. Civ. App.) 212 S. W. 754.

The judgment is modified so as to eliminate a recovery for $28.27, and as so modified is in all things affirmed. The appellees will pay costs of the appeal.