STATE of Missouri, ex rel. William L. WEBSTER, Attorney General, Appellant,

v.

MEMBERSHIP MARKETING, INC., a/k/a MMI, a/k/a 5 Star Plus, a/k/a Five Star Fund, et al., Respondents.

No. WD 40310.

Missouri Court of Appeals, Western District.

Jan. 3, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application to Transfer Denied April 18, 1989.

John J. Oldenburg, Jr., Asst. Atty. Gen., Kansas City, for appellant.

Thomas T. Wood, Chipman and Wood, P.C., Independence, and Donald H. Flintoft, Osburn and Holland, Houston, for respondents.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

CLARK, Presiding Judge.

Appellant instituted this action for the purpose of securing a permanent injunction prohibiting respondents from conducting a business alleged to constitute a pyramid sales scheme as defined in § 407.400(5), RSMo 1986.[1] The trial judge granted a temporary restraining order but, after a hearing, dissolved the order and denied the petition for injunction.

On this appeal the state contends the evidence showed respondents were conducting the prohibited sales activity and, as a matter of law, the trial court should have granted the injunction. We agree but remand the case for further proceedings consistent with the views expressed in this opinion.

The facts of the case are essentially undisputed, although respondents introduced no evidence because the court terminated the hearing when it denied relief at the conclusion of appellant's presentation of evidence. That evidence included copies of all relevant documents used in the promotion and implementation of respondents' marketing scheme and the testimony of respondent Membership Marketing's president and two of its sales representatives. The issue confronted by the trial court was whether respondents' activity in promoting the membership club constituted the venture of a pyramid scheme prohibited in Missouri by statute. We recount the facts as they were disclosed in the testimony of respondent Membership Marketing's president, its sales representatives and confirmed by the literature respondents distributed.

The heart of respondents' program is a membership club known as "5–Star Plus," owned and operated by Membership Marketing, Inc., hereafter MMI. Membership in 5–Star Plus costs a $100.00 membership fee and $100.00 per month in dues. In return for the payments, a member receives the following benefits: (1) Medical insurance at a group rate, (2) Membership in Tidelands Automobile Club, (3) Discount purchase opportunities, (4) Monthly news-

---

1. All statutory references are to RSMo 1986.

letter and sales aids, and (5) $400.00 vacation travel credit.

The principal focus of MMI sales activities conducted through seminars is to recruit persons to become marketing representatives for MMI in the sales of 5–Star Plus memberships. Although it is not required for marketing representatives to be 5–Star Plus members themselves, it is encouraged that they subscribe first, to demonstrate their faith in the product and second, by awarding no benefits where recruitment on successive levels is of subordinate market representatives who do not take memberships in 5–Star Plus.

A marketing representative is rewarded for sales of 5–Star Plus memberships by a computation known as a "downline matrix." A sales representative's downline consists of 5–Star Plus members who have subscribed in response to a solicitation by the sales representative or by subordinate sales representatives who were originally recruited by the first sales representative. There is a minimal $25.00 commission paid to the representative for each of the first three memberships sold. Additional memberships sold by the representative, or by members he has recruited, enable the representative to qualify for increased compensation in a progression through nine levels. Each level is an exponential computation based on the original three memberships. Level 2, for example, is reached by adding three times three or nine new members. Level 9, the highest level to reach, represents the accumulation of memberships sold in the eight lower levels plus additional members numbering three to the ninth power $(3^9 = 19,683)$ for a total of 29,520 memberships sold.

A major inducement for sales representatives to advance through the various levels by sales of memberships is the use of an automobile graded as to quality depending on the level reached. For example, a Level 3 downline entitles the sales representative to use of a Ford Escort, or comparably priced car. A Level 6 downline, representing a total of 1092 memberships sold, allows the sales representative to select a Cadillac, Lincoln or BMW. The automobiles are available for the sales representative to use only so long as the required number of memberships remains at the level equal to the automobile class associated with that level.

The other major benefit to sales representatives is the payment of commissions on the monthly dues paid into 5–Star Plus by members the representative has recruited or by those in the representative's downline. A representative is therefore entitled to commissions, not only as a result of his own sales efforts, but in consequence of sales made by other representatives who entered the sales force as a result of that representative's successful enlistment of them.

Commissions actually become payable only after a sales representative has reached the Level 4 downline at which point the representative is directly or indirectly responsible for 120 5–Star Plus memberships. Commissions at Levels 4 through 8 are computed at 5% and commissions at Level 9 are at 10%. Assuming all memberships remained active, monthly commissions at Level 4 amount to $775.00 and at Level 9, $246,185.00. These are in addition to use of the automobile mentioned above.

Under the downline concept, it would be theoretically possible for a sales representative to achieve any level of 5–Star Plus members credited to his account merely by making the three original membership sales. This would occur if the first three persons sold memberships also became sales representatives and each added three new members and those, in turn became sales representatives who added new members. When the total of all reached 29,520, the originating sales representative in the chain would be at Level 9 and entitled to a 10% commission on the monthly dues of the members in that downline matrix. MMI would also be obligated to pay a 5% commission on the same membership dues to all other sales representatives in that matrix between Levels 4 and 8.

Attainment of any level in the matrix is not, however, contingent on recruiting sales representatives. If a sales represent-

ative, for example, sold 29,520 5–Star Plus memberships, he would receive all the benefits due at Level 9, although MMI would benefit because in that case, the membership dues would be burdened with payment of only one commission. Whichever basis is used to reach a given commission level, the sales representative must sell the first three memberships personally and see that those memberships remain in good standing. If any of those first three memberships goes into default, the sales representative loses the downline rights.

█ The applicable statutes are § 407.405 which prohibits pyramid sales schemes and §§ 407.100 and 407.415 which authorize the attorney general to institute action in the circuit court to secure restraining orders and injunctions to prevent persons from engaging in such schemes. A pyramid sales scheme is defined in § 407.400(5):

> The term "pyramid sales scheme" includes any plan or operation for the sale or distribution of goods, services or other property wherein a person for a consideration acquires the opportunity to receive a pecuniary benefit, which is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers, and is based upon the inducement of additional persons, by himself or others, regardless of number, to participate in the same plan or operation[.]

Appellant contends the trial court should have granted a permanent injunction because the plan of membership sales described above was an illegal sales scheme in that the opportunity for sales representatives to receive bonuses and benefits was not primarily contingent on the quantity of memberships sold, but upon the inducement of other persons to participate in the same membership plan.

We first consider the contention by respondents that the sales program falls within the exemption described by the phrase in the statute which reads: "which is not primarily contingent on the volume or quantity of goods, services or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers."

█ This particular provision in the statute is the so-called Amway exemption intended to exclude from application of the pyramid law the sales of tangible personal property to an agent or intermediary who then resells the product to the ultimate consumer. *State ex rel. Ashcroft v. Wahl*, 600 S.W.2d 175, 181 (Mo.App.1980); *See In Re Amway Corp.*, 93 F.T.C. 618 (1979). We conclude the Amway exemption is not applicable to respondents' sales plan because the opportunity for respondents' sales representatives to receive a pecuniary benefit is based on their ability to induce others to join the plan, and they in turn others, and not on the sales of 5–Star Plus memberships.

In *Wahl*, the sales were of memberships in a club known as Business Men's Venture. The price for membership was $1,000.00 of which sum $500.00 was paid to the person selling the membership and the remaining $500.00 was remitted to an earlier admitted member who had attained a specified position on the chart of members. The payment of the first $500.00 entitled the participant to a position on the chart from which he advanced depending on successive sales of two memberships by him and by those he recruited. In *Wahl*, as here, the plan sponsor argued that the sale of a chart position was either a service or other property within the Amway exemption and therefore beyond the reach of the statute. The court rejected the argument concluding that even if the membership be construed to be "other property," the exemption does not apply because the place on the chart is never resold.

It is irrelevant to the disposition of this case to determine whether, as respondents argue, the Amway exemption should apply not only to tangible goods such as cosmetics, but also to a service which 5–Star purports to furnish. The prospect sales representatives have to receive pecuniary benefits from MMI is not dependent on the resale of the membership the representative has bought but upon his ability to

induce others to join the plan and recruit added sales representatives. The quoted exemption in the statute is not applicable here irrespective of the fact that respondents purport to offer a service in place of tangible goods.

Returning to the definition of a pyramid scheme as set out in the statute, the foremost attribute of such an activity is the concept that by joining the venture, the participant has an opportunity to realize a pecuniary benefit, not from the sale of goods or services, but based on his ability to induce others to join the enterprise. The prospective return from participation under such a concept realistically declines in an inverse ratio as the number of participants increases because the possibility of recruiting new participants eventually is exhausted. A position at the apex of the pyramid offers the greater opportunity for gain. Those entering the venture last usually have little or no genuine opportunity for benefits from the addition of new participants.

In the present case, certain aspects of the 5-Star Plus venture meet the definition of a pyramid scheme and some do not. This is attributable to the options of participants to be 5-Star Plus members or sales representatives or both. Certainly from the standpoint of MMI, the primary objective and source of profit lie in the sale of 5-Star Plus memberships and if a sales representative engages only in that activity without attempting to recruit new sales representatives, there is no basis to charge a violation of the pyramid scheme law. As was noted earlier, attainment of the highest level of membership sales and commission benefits is not dependent on enlistment of subordinate sales representatives. A salesman could reach that level of compensation if he sold 29,520 memberships, even though none of those persons agreed to become a sales representative.

The aspect of the activity which does subject respondents to the prohibition of the statute is the device of the "downline matrix" which offers participants the opportunity to earn commissions and free automobiles in return for recruitment of successive levels of salesmen. The statute condemns a scheme wherein the opportunity to receive a pecuniary benefit is based upon the inducement of other persons to participate in the same plan. The downline matrix concept is precisely that, a plan whereby the person initiating the matrix stands at the apex of the pyramid and earns the right to commissions, not on the basis of his own sales of 5-Star Plus memberships, but on the proliferating recruitment in groups of three of sales representatives in declining order to the base of the pyramid.

■ Respondents offer several arguments to demonstrate that the sales arrangements for 5-Star Plus do not constitute a pyramid scheme. They first point out that the element of consideration paid by a participant must be shown before the statute becomes applicable. In the 5-Star Plus concept, a sales representative may enter the matrix and be eligible to earn commissions without buying a membership and, according to respondents, this precludes a finding that this essential element was proved.

A consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility given, suffered or undertaken by the other. *Charles F. Curry and Co. v. Hedrick*, 378 S.W.2d 522, 533 (Mo. 1964). A consideration within the contemplation of § 407.400(5) therefore is not limited to a payment of money, nor is the term "paid" used in the statute.

According to respondent MMI's statement of its practices, a sales representative for 5-Star Plus memberships enters into a contract with MMI wherein the representative agrees to abide by the marketing policies of MMI and, in turn, acquires the right to be paid commissions and bonuses for membership sales. The consideration sufficient to meet the condition of § 407.400(5) is the responsibility to MMI which the sales representative assumes by his agreement and the concurrent benefit of commissions to be earned. The fact that a sales representative may or may not also become a

5–Star Plus member by payment of dues is irrelevant to the question of consideration.

Respondents also argue that they should be judged based on the Amway exemption because commissions to sales representatives are based on the quantity of memberships sold. They also say they should not be subject to the prohibition of the pyramid law merely because the product they offer is a service rather than soap, cosmetics or food supplements. This argument cannot overcome the fact that under the matrix scheme, assuming sales representatives are engaged in selling memberships and recruiting new sales representatives, there is no resale of the product outside the matrix. The sales representative acquires nothing for resale to an ultimate consumer because the plan depends on that consumer becoming a salesperson himself and, in turn, persuading others to join and participate in the same way. The Amway exemption simply does not apply.

■ Respondents also undertake to demonstrate that a membership in 5–Star Plus has a value in that members have the opportunity to purchase goods and services at substantial discounts. The argument is presumably intended to dispel any suggestion that purchasers of memberships are being victimized. The value of a 5–Star Plus membership is not an aspect of this case or of appellant's charge. Respondents have not been accused of an unlawful merchandising practice under § 407.020, only with operating a pyramid sales scheme. Whether respondents' product has value or is worthless is irrelevant to the issues in this case.

At oral argument, appellant agreed that the sale of 5–Star Plus memberships in Missouri was not the focus of the complaint. What appellant seeks to enjoin is that aspect of respondents' sales activity which is designed to induce persons to become MMI sales representatives by offering such persons the opportunity for pecuniary benefit by inducing others to participate in the same plan by becoming sales representatives. Appellant's evidence made a prima facie case establishing that the latter feature of respondents' market-

ing activities constitutes a pyramid scheme within the definition of § 407.400(5). The trial court therefore erred when it ordered appellant's petition denied.

The judgment is reversed and the cause is remanded for further proceedings, including the receipt of additional evidence from the parties, consistent with the views expressed in this opinion.

All concur.