HENRY J. MASSMAN, RESPONDENT, v. CARL A. MUEHLEBACH, APPELLANT.—95 S. W. (2d) 808.

Kansas City Court of Appeals.  June 15, 1936.

*Garrett & Ruark* for respondent.

*P. E. Reeder, David R. Derge, Charles J. Winger* and *Winger, Reeder, Barker & Hazard* for appellant.

REYNOLDS, J.—On May 10, 1934, the plaintiff, Henry J. Massman, filed his petition in the Circuit Court of Jackson County, at Kansas City, against the defendant, Carl A. Muehlebach, for the recovery of judgment for a loan alleged to have been made by him to the defendant in the sum of $3000. Upon motion by the defendant to require the petition to be made more definite and certain and to show whether the contract sued on was oral or written, the plaintiff filed the following amended petition, upon which the cause was tried:

"Plaintiff for his cause of action states that on the 10th day of November, 1931, he loaned to defendant the sum of three thousand

($3,000.00) dollars, which sum defendant orally agreed to repay with interest upon demand.

"That thereafter and before instituting this suit plaintiff duly demanded payment of the same from defendant, but no part thereof has been paid and defendant is now justly indebted therefor to this plaintiff in the sum of three thousand ($3,000.00) dollars, with interest at the rate of 6% per annum from the 10th day of November, 1931.

"Wherefore, plaintiff prays judgment against defendant for the sum of Three Thousand ($3,000.00) Dollars with interest at the rate of 6% per annum from the 10th day of November, 1931, and for costs."

To the amended petition, defendant made answer by way of a general denial.

Upon a trial of the cause, the plaintiff introduced his evidence tending to show that, on November 10, 1931, he delivered to the defendant his check to the defendant's order in the sum of $3000 as a loan in such sum.

It appears that defendant was interested in Graham Metal Manufacturing Company (hereinafter called company) and was the secretary and treasurer thereof, in which company it appears that all of the stock was held by him and his brother George and one Ralph A. Graham. The company was engaged in the business of obtaining patents on and of manufacturing and marketing metal bottle caps.

Plaintiff testified that, upon defendant's request, he called on defendant at his office in Kansas City, Missouri, on the morning of November 10, 1931; that, while he was there, defendant told him about a patent bottle opener or cap being produced by the company and said to him, "I want to make a demonstration to you and I want to show you what it is all about;" that defendant "got out a lot of bottles, caps and other kind of appliances" and put caps on the bottles and made a demonstration of how to use the caps or how they would work; that he listened to defendant; that the defendant told him about the company's being "hard up" and said that defendant and his brother George had spent some $60,000 in promoting the patents and that they needed further capital "to put this thing over" and that he would like to sell one-quarter interest in the company to plaintiff and wanted some $15,000 to $25,000 for such interest; that he said to defendant, "Carl, I have got all I can handle at the present time and I could not be interested. I couldn't do you any good, but if you are hard up, I will be glad to loan you two or three thousand dollars if you want it;" that defendant said, "Well, if you could let me have three thousand dollars, it will fix me up fine and I will take care of it for you in a short time;" that he replied, "Fine and dandy, Carl, and when I get to the office I will have them send you a check

for three thousand dollars;'' that, upon reaching his office, he directed that a check be drawn and sent to defendant payable to his order and he signed the check and directed that it be delivered to defendant; that such conference' was the only conference he ever had with defendant concerning the matters discussed.

The check was introduced in evidence as plaintiff's Exhibit No. 1 and bore the following endorsement: ''Deposit to account Graham Metal Mfg. Co. Carl A. Muehlebach R. T. Kansas City Clearing House—Paid—Nov. 12, 1931, Mercantile Trust Company, K. C. 18 Mo.''

Plaintiff further testified that no part of the money thus paid defendant on the check had ever been repaid to him; that he had seen defendant on several occasions since the check was given, when defendant told him that he was going to take care of the loan shortly.

Defendant, in his testimony, denied that he borrowed any money from the plaintiff or that plaintiff had made him a loan and asserted that the check for $3000 given him by plaintiff on November 10, 1931, was in part payment for a one-quarter interest which plaintiff agreed to buy in the company; that such check was made payable to him and immediately endorsed by him and deposited to the credit of the company in its account with the Mercantile Trust Company. The defendant testified that, in the fall of 1931, he and plaintiff had two conferences with reference to plaintiff's becoming interested in the company; that the date of the last conference was November 10, 1931, the date upon which the check in question was given; that the first conference was a week or ten days prior to such date. He testified that, on the occasion of the first conference, plaintiff was waiting for him in the office of one Mr. Gwin (the bookkeeper of the company), which adjoined that of defendant; that, when defendant came in, defendant and plaintiff went into defendant's office where they talked about one and one-half hours and, when plaintiff left, he said he would be back; that the purpose of the conference was to interest plaintiff in the purchase of some stock in the company; that they talked about the possibilities of a metal cap which the company was developing and defendant demonstrated the use of the same to plaintiff, who seemed to be interested at the time and who said it was a ''fine product and had great possibilities;'' that he indicated to plaintiff that plaintiff should purchase a one-quarter interest in the stock of the company; that, at that time, he and his brother George and Ralph A. Graham owned all of the stock of the company, one-third each; that he went into the financial condition of the company at that time and stated to plaintiff that the company needed money to carry on the experimental work and to build up its capital so that it would be in shape to undertake large production; that the company had patent papers which he showed plaintiff on his second

visit; that he told plaintiff at that time that he wanted him to purchase one-quarter interest in the company for $15,000 and that it had been agreed that enough stock should be sold him to make him equal with the other stockholders; that the company was in need of money at that time to continue operation and to carry on the experimental work; and that he thought that $15,000 would put it up to the point of production. Defendant testified that there were present at the conference on the morning of November 10, 1931, plaintiff, Mr. Graham, himself, and at times Mr. Gwin; that, in such conference, he had all of the products the company was making including the patent and the caps which were in an experimental stage; that Mr. Graham went through and explained everything in detail and demonstrated how the caps could be put on the bottles by hand as well as by machine and also demonstrated the two piece product cap and other caps which the company had been manufacturing and selling; that defendant then talked to plaintiff about the financial end of it and explained that he could buy one-quarter interest for $15,000 and that defendant and the other stockholders would be glad to have him come in and they thought that the business of the company had great possibilities; that they talked over the uses to which the money would be put and discussed the financial condition of the company; that he told plaintiff the company was in bad straits and needed money to carry on and, if it had that much money, he knew that it would be over the hill and that they would have something that "would make a lot of money;" that plaintiff replied that he did not have the available money, that it was tied up in government work, that he had a "couple of million" dollars in government contracts all of which he could not get at the time, and that he had only $3000 available, but that he would send the rest of the money later; that he told plaintiff that the $15,000 was to be for experimental purposes and for the expansion of the company and would actually be put in the company as part of its assets; that he told him that the stock was to be furnished plaintiff by Mr. Graham, himself, and his brother so that plaintiff would be equal with the others in his holdings; that he did not say anything to plaintiff about borrowing any money from him; that, just as the plaintiff was ready to leave the office, the plaintiff said he would go in on the deal and would send over the $3,000 and the check was sent over by the plaintiff about thirty or forty minutes afterward; that he turned the check over and made the following endorsement thereon: "Deposit to the account of Graham Metal Manufacturing Company, Carl A. Muehlebach;" that he then gave it to Mr. Graham, who deposited it in the bank to the credit of the company; and that the notation, "November 10th, 1931, $3,000," in the bank passbook represented the deposit in the company's account.

The passbook referred to was introduced in evidence as defendant's Exhibit A.

Defendant testified further that at the time nothing was said about the payment of the balance of $12,000, or as to when it should be paid, and that no delivery of stock was made. He denied that he ever at any time or on any occasion had talked with plaintiff and told him that he would personally repay the $3,000. He denied that he asked the plaintiff for a loan or that there was ever any discussion of his personal affairs between himself and plaintiff. He stated that plaintiff had never paid the balance of $12,000 and that he had talked to him about it at one time and plaintiff told him he was not going ahead with the deal and had had some financial difficulties and could not go through with it.

At the conclusion of defendant's evidence, upon direct examination, plaintiff's counsel, over defendant's objections, was permitted to cross-examine defendant at length as to the financial structure and condition of the company and the amount and nature of its assets, its indebtedness, its costs of operation, its losses and liabilities generally; to introduce in evidence financial statements and other records of the company tending to show that it was in bad financial condition and was "hard up;" to examine defendant with reference to said financial statements and other records and also with reference to the entries of its account with the bank appearing on the bank passbook which defendant had introduced in evidence; to inquire of defendant whether such condition as shown by the statements and the records of the company, including the passbook in question, had been explained by him to plaintiff during the conferences leading to the delivery of the check by plaintiff; and also to make inquiry of defendant as to whether he had sold or attempted to sell the stock of the company to any other persons at any time.

Defendant introduced two witnesses in his behalf, Graham (the vice-president of the company) and Gwin (the bookkeeper), who, he claimed, had been present during the conferences noted and who likewise, for themselves, claimed that they were present at such conferences and heard what was said between plaintiff and defendant and who further testified as to the part that they took in such conferences. The witness Graham testified, on direct examination, that he told plaintiff that the company had several obligations by way of current bills and that it did not have the money to take care of them and that he described to plaintiff the physical assets of the company and the property that it owned. The witness Gwin, on direct examination, testified that he heard the conversation between plaintiff and defendant and heard them talking of the financial condition of the company. Defendant and his witnesses were asked by his counsel whether the financial condition of the company had been explained to plaintiff in the conferences between the plaintiff and the defendant and made answer in the affirmative, and defend-

ant's counsel offered in evidence the bank passbook of the company showing its transactions with the bank over a period of five years.

The cause was tried before the court and a jury; and the trial resulted in a verdict in favor of plaintiff for the sum of $3,662.37 (principal and interest), which was reduced by *remittitur* to the sum of $3,609; and judgment in such reduced amount was rendered for plaintiff.

After unsuccessful motions for new trial and in arrest of judgment, the defendant appeals.

1. Upon this appeal, defendant complains that the cross-examinations of himself and his witnesses Graham and Gwin were erroneous; that the evidence elicited thereon relating to the financial structure of the company and its financial condition and status was irrelevant and immaterial and was not within the issues framed by the pleadings; and that such cross-examinations and the evidence elicited could properly be based only upon a charge against defendant of fraud and deceit and was outside any issue presented as to whether the check for $3000 delivered by plaintiff to defendant was a loan to defendant of such sum by plaintiff. He likewise complains of error upon the part of the trial court in refusing to strike out such evidence and take it from the consideration of the jury.

We can not agree with defendant in his contentions. By his own testimony, he laid the foundation for his cross-examination along such lines, as did his witnesses Graham and Gwin lay the foundations for their cross-examinations.

There was a clear cut conflict between the evidence of plaintiff and that of defendant and his witnesses as to whether the transaction involving the delivery of the check for $3000 by plaintiff to defendant was a loan. The plaintiff's evidence was directly to the effect that the transaction was a loan, while that of the defendant and his witnesses was to the effect that the check was in part payment of the purchase price of certain stock held by defendant, his brother, and the witness Graham in the company (which stock plaintiff had purchased) and was not a loan. Whether it was the one or the other was a question of fact, under the evidence, to be determined by the jury, necessarily involving the credibility of the witnesses.

Defendant denied that the transaction was a loan to him and, for the purposes of showing that it was not and thereby defeating plaintiff's action, undertook to show that the check was given in part payment of the purchase price of certain stock in the company which plaintiff had purchased. Of course, if it was a mere payment on the purchase price of certain stock, it was not a loan to defendant; and plaintiff was not entitled to recover. For the purpose of giving color to his contention that the transaction was a part payment of the purchase price by plaintiff of stock purchased by him and for the purpose of corroborating his testimony

and that of his witnesses (that the transaction was not a loan to defendant but was the purchase of an interest in the company or of stock therein by plaintiff), the defendant testified as to the conversations with plaintiff leading to the giving of such check and testified that, in such conversations, the financial affairs of the company and its possibilities were discussed between himself and plaintiff and that he made known to plaintiff the financial condition thereof, including the fact that such condition was bad and that the company was in bad straits and "hard up" and had to have money from outside sources in order to continue experimental processes.

Defendant having thus voluntarily gone into the matter of the financial condition of the company for the purpose of bolstering up his contentions that the transaction between plaintiff and himself was not a loan but an investment, it was perfectly proper, on cross-examination, that he be inquired of as to everything within his knowledge concerning the financial condition of the company which might tend to weaken his contention, even though collateral.   [70 C. J., p. 638, sec. 807.]

The scope and extent of the cross-examination of a witness are matters largely within the discretion of the trial court, and its ruling thereon will not be disturbed unless an abuse of discretion is shown. [Tueteberg v. St. Louis Public Service Co. (Mo. App.), 41 S. W. (2d) 956; Neal v. Caldwell, 326 Mo. 1146, 34 S. W. (2d) 104; Adriance v. Arnot, 31 Mo. 471; State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 132; Rath v. Knight (Mo.), 55 S. W. (2d) 682; Blake v. Keiser (Mo. App.), 267 S. W. 94.]

Generally speaking, a witness may be asked on cross-examination any question which tends to test his accuracy, veracity, or credibility, except one of self incrimination.   [Wendling v. Bowden, 252 Mo. 647, 161 S. W. 774; Ayers v. Wabash Ry. Co., 190 Mo. 228; Rath v. Knight, supra.]

Defendant testified concerning statements made to the plaintiff during the conversations between them.   It was proper on cross-examination to test the accuracy of such testimony as bearing on defendant's credibility as a witness and as bearing on the probabilities or improbabilities of his contentions being correct.   It was competent to question him with reference to his familiarity with the statements and other records of the company, to which he had access, and as to what they showed with reference to the financial condition of the company, to ascertain whether they corroborated or contradicted him in his contentions and in his testimony.   There is no evidence anywhere that plaintiff had been charged on the records of the company with the purchase of stock in the company or of an interest therein or that he had made a payment thereon or that there was a balance due from him on account thereof in the

sum of $12,000. Such statements and records failed to show any transaction whatever with plaintiff with reference to the purchase of any shares of stock in the company or of the purchase of any interest in such company by him. Such records upon the other hand show that the item relating to the $3000 check deposited to its credit in the bank was carried by it in its notes payable account as an item due the plaintiff. It was competent to contradict defendant and his witnesses by the records of such company in their claims and contentions for the purpose of affecting their credibility as witnesses. It was competent for the plaintiff, upon the cross-examination of defendant and his witnesses, in view of the defense being made and in view of the testimony given by each upon direct examination, to show the real financial condition of the company as tending to show, when made known, that no prudent business man would invest money therein by way of a purchase of an interest therein or by way of purchasing stock therein and as tending to show the improbability of defendant's contention and testimony and as tending to overcome the implications therefrom. In 64 C. J., p. 152, sec. 176, it is said: "Either party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible—"

Such evidence in any case may be introduced and developed upon the cross-examination of the adversary's witnesses by whom such adversary attempts to make his proof.

2. It is contended by defendant that plaintiff, in the cross-examination of himself and his witnesses, was permitted to try his case as one for fraud and deceit practiced on him by defendant (in defendant's failing to unfold to him the true condition of the affairs of the company and concealing from him the true condition of the company's affairs) rather than as one for the recovery of money lent, as presented by the petition. He contends that the financial condition of the company was immaterial and irrelevant to any issue raised by the pleadings and had nothing to do with the question of whether plaintiff had made a loan to defendant or not and that the cross-examinations in which such condition was developed were unauthorized and prejudicial.

Whether such financial condition was immaterial and irrelevant, in the first instance, to the issue as to whether the transaction in question was a loan to defendant, it is unnecessary here to determine. It might have been had defendant contended himself with a mere denial that it was a loan. It was material and relevant to the affirmative defense sought to be made to the effect that the transaction was an investment in the company or in its stock. Its financial condition had to do with the value of an investment therein or of an investment in its stock and, therefore, bore directly

on the probability or the improbability of a prudent man's investing in it or in its stock.

Furthermore, in making and attempting to establish such defense, defendant and his witnesses stated that the financial condition of the company had been discussed in the conferences with plaintiff, leading to the giving of the check, and that plaintiff had been advised of such condition and of the possibilities of the company, when sufficiently financed, for large production and profit. The effort clearly was to establish the defense sought to be made and to show the probability of the contentions of defendant and his witnesses, with respect to such defense and the character of the transaction being that of an investment rather than a loan, being correct and to show that the plaintiff was interested in the company only and therefore had invested in the company or in its stock and had not made a loan to defendant.

Plaintiff had the right to meet such issue on cross-examination by showing the true financial condition of the company as tending to show that its condition was such that no prudent person would invest therein and thereby to show the improbability of defendant's contentions and meet the implications springing from his testimony. He had the right to use the records of the company in making such showing. The defendant, by his defense and his evidence in support thereof, thus made the financial condition of the company material and relevant to the issues being tried, even if it otherwise had not been. The action was not for fraud and deceit. The plaintiff made no claim that he had been induced by false statements or misstatements as to the condition of the company to make his loan to defendant; but, when defendant stated that he had discussed with and made known to plaintiff the financial condition of the company and that plaintiff had thereupon made an investment in it, plaintiff had the right on cross-examination to search out the real condition of the company so far as defendant knew it and the statements which he made to plaintiff concerning such condition and the phases thereof to which he had not called plaintiff's attention, in an effort to overcome the implications springing from defendant's testimony and to show the improbability that he had invested therein.

It is a well-settled rule in this State, where one party to a controversy invites evidence of a certain character, even if incompetent, he estops himself from objecting to the other party's following it up with testimony of the same character tending to explain his side of he controversy. [Larabee Flour Mills v. West Plains Commission Co., 216 Mo. App. 257, 262 S. W. 389.]

In Loveland v. Arnold (Mo. App.), 261 S. W. 741, l. c. 742, this court said: "As plaintiffs at the outset of the trial voluntarily went into, and gave evidence concerning, the circumstances surrounding,

and what was said and done at and prior to, the alleged execution of the notes sued on, of course no valid objection could thereafter be made to defendant's testifying and giving their version of what took place, even if such testimony had been otherwise inadmissible.'' If defendants in that case could have thereafter testified and given their version of what took place, they could have developed such version by evidence elicited upon cross-examination of the plaintiffs' witnesses who first gave evidence of such circumstances.

We are unable to find wherein the trial court abused its discretion or committed error in permitting the cross-examination of defendant and his witnesses in the matters complained of.

We have examined the authorities cited by defendant in his brief. However correct the principles of law declared upon the points presented in each may be, we do not find them to be in point upon the questions presented on this appeal.

3. It follows also from what has been said that there is no error in the trial court's action in overruling defendant's motion to strike out the testimony of defendant and his witnesses elicited upon their cross-examinations, complained of by the defendant.

4. Defendant complains of the action of the trial court in refusing to permit the defendant to state whether or not, at the time of the transaction in question, he had any occasion to borrow $3000 of plaintiff. This question, when asked defendant, was objected to as leading and suggestive; and such objection was sustained. Defendant's counsel did not reframe his question to meet such objection or make any further effort to make such proof. The objection to the question was well made. The question was leading and suggestive and called for a conclusion by the witness. The ruling of the court sustaining such objection was proper.

5. Defendant complains also of the action of the trial court in refusing to permit him to testify on his redirect examination as to a discussion between himself and other stockholders of the company in which it was agreed that they would sell to plaintiff part of their stock. It is not contended that plaintiff was present at the time of such discussion. An objection to such testimony was made and sustained to the effect that the record of the stockholders' meetings and proceedings was the best evidence. Thereupon defendant made an offer of proof to the court, by which he offered to show that the stockholders had agreed between themselves to sell plaintiff one-quarter of the total stock of the company. The offer was denied, the court giving as its reason for so doing that the proffered proof had formerly been made and that to introduce it again would be a mere matter of repetition. The record shows that such proof had been made by defendant in his direct examination and that the offer was subject to the objection that to allow the proof again to

be made would amount to a repetition. The defendant was therefore not prejudiced by reason of the action of the court in sustaining plaintiff's objection to the effect that the records were the best evidence, even if erroneous as contended by defendant.

6. The final assignment of error and point made by defendant is as follows: "The court erred in permitting respondent's counsel to introduce hearsay evidence over the objection of the appellant which was prejudicial to the appellant."

Under this head, he complains of certain questions asked of witness Graham in his cross-examination relating to statements claimed to have been made by him to one George Muehlebach, which questions he was required to answer, and claims that the answers thereto were hearsay. Such questions appear to have been asked such witness in an effort to discredit him and to show that he was not a disinterested witness but one biased in favor of defendant and active in his behalf. The cross-examination was proper. Moreover, such statements and the answers thereto were not prejudicial to the defendant.

7. The further complaint with reference to the testimony of one Luther W. Adamson, a witness for plaintiff in rebuttal, in which he stated that defendant's witness Gwin had made a statement to him that such witness knew that the transaction in question was a loan by the plaintiff to the defendant, is not well made. Gwin, while a witness, was asked if he had not made such a statement to Adamson and denied that he had. It was competent for plaintiff to contradict him in such particular by Adamson and to show by Adamson that he had made such statement.

There was no error in the contradiction of defendant by witnesses Manassa and Hicks with respect to his denial of the statement attributed to him by plaintiff to the effect that he would take care of his obligation or loan in a short while. Manassa testified that he and plaintiff and the witness Hicks were together at a dinner in the Muehlebach Hotel in the fall of 1932 when some one came along whose name he did not know at the time and stating to plaintiff that he was going "to take care of that obligation" or "that matter with you." The evidence of Manassa was admitted by the court subject to its being connected with defendant and subject to its being shown that the party making such statement was defendant. It was connected by the witness Hicks, who testified that he was present with plaintiff and Manassa at the time and place mentioned by witness Manassa and that defendant, whom he knew, came up and made the statement to plaintiff as testified by Manassa.

We have disposed of all of the points made by defendant in his brief. We have not found any of them well taken. An examination of the record presents no reversible error.

The judgment of the trial court is affirmed. All concur.