**EDWARD L. BAKEWELL,
INC., Respondent,**

v.

**Thomas HALL, Appellant.**

No. 54482.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 21, 1989.

Homer N. Mastorakos, Private Atty., St. Louis, for appellant.

Steven W. Koslovsky, Private Atty., Clayton, for respondent.

DOWD, Presiding Judge.

This appeal arose pursuant to a suit for a broker's commission. The jury found in favor of plaintiff-broker, awarding damages at 6% of the sale price plus interest. Defendant appeals.

In 1983, appellant Thomas Hall, an architect, began to design and build a single-family home on a lot bordering his own property. While the home was still in the early stages of construction, appellant's partner Howard Cohen suggested that he list the home for sale through Claire Gordon, a real estate agent with Edward L. Bakewell, Inc. Mr. Hall and Bakewell entered into a Uniform Listing Contract on November 8, 1984. Under the terms of this exclusive contract, Bakewell would receive a commission equal to 6% of the sale price of the home. The home was listed at $395,000. Because of the state of construction, it was unsafe for Ms. Gordon to show the home to prospective buyers, but she proceeded to place newspaper advertisements, print span sheets, put up a for sale sign and make other sale efforts.

In January of 1985, Mr. Hall met with a friend, Mr. Kolaz, who expressed an interest in purchasing the home. Mr. Kolaz felt he could not pay the asking price, but Mr. Hall said he would "work something out" with the agent to reduce the commission and thus lower the sale price. Mr. Hall and Mr. Kolaz initially agreed to a purchase price of $385,000, but Mr. Kolaz later

requested certain modifications at a cost of $20,000. The sale was closed on March 1985 and Mr. Kolaz paid a total of $405,-387.00. On May 29, 1985, Edward L. Bakewell, Inc. filed a petition to recover broker's commissions, claiming that under the November 1984 contract, Hall owed the company a 6% commission on the sale price of $385,000.00, but that Hall had refused to pay. In October, Bakewell amended the petition to request prejudgment interest from the date of closing.

The cause went before a jury in January 1988 and the parties presented the following evidence. Claire Gordon testified that she found out about the sale from Mr. Cohen and then called Mr. Hall to confirm. Mr. Hall refused to name the buyer, purchase price, or closing date. Although Ms. Gordon offered to help with the closing, Mr. Hall refused her aid and expressed a desire to negotiate the commission. Ms. Gordon specifically denied any agreement to rescind the listing contract. Sarah Bakewell, president of Edward L. Bakewell, Inc., testified that Ms. Gordon had no authority to negotiate the listing contract and that she herself did not represent any intention to avoid the sale contract. In addition, plaintiff contended in its opening argument that the sale price was actually $405,000, the sum of the $385,000 figure plus the $20,000 in extras.

Mr. Hall testified that in late January or early February he and Claire Gordon agreed to rescind the listing contract and replace it with an agreement that he would pay Bakewell the actual costs it had incurred. He stated that he never paid these sums to Bakewell because it never gave him a statement of expenses. Prior to Mr. Hall's testimony, Mr. Kolaz testified that he had paid Mr. Hall a total amount of $405,000 for the home. Mr. Hall contended that the sale price was only $385,000 because the $20,000 in extras should not be included in the sale price.

The cause was submitted to the jury who found in favor of plaintiff and awarded damages as follows: "We, the undersigned jurors, assess the damages of plaintiff Edward L. Bakewell, Inc., at 6% of $405,000

and 9% interest APR thereon from March 20, 1985." Defendant moved the court to enter a judgment notwithstanding the verdict, but the court denied this motion. Defendant now appeals in two counts.

■ Appellant first claims that the trial court erred in sustaining respondent's motion in limine as to evidence of an April 1985 meeting and of a follow-up letter from respondent. The letter, dated April 15, 1985, read as follows:

Dear Tom,

Thank you for meeting with Claire Gordon and me last week regarding the commission due us on the sale of #13 West Drive, Chesterfield, MO 63017.

As per our Listing Contract Agreement, we are due a 6% commission on the total sale price, which you have indicated to be $385,000 (minus the extras). This amount is $23,100.00.

At your request, due to the fact that this sale involved a close business associate of yours, Claire and I said that we would consider some kind of concession in the commission. We would be willing to do so under the following conditions: a) The reduced commission figure will be at a 5% rate instead of 6%—this amount is $19,250.00. b) This amount is to be paid in full on or before May 15, 1985. c) Edward L. Bakewell, Inc. and Claire Gordon will list any other residential properties to be developed on the remaining parcels you own behind # 13 West Drive.

Tom, we feel very strongly that this is the best concession we can make. Our attorney has advised us that there would be no problem in demanding the full amount due us according to our contractual agreement. We would, however, like to accommodate you with the thought of future business in mind.

If you have any questions regarding this arrangement please call me right away. We are anxious to resolve this as quickly as possible.

I am forwarding a copy of this letter to Mark Twain Bank, along with a copy of the Listing Contract.

We look forward to your co-operation in this matter. Should we not receive

payment by May 15, 1985 we have no other recourse than to pursue the proceedings through our attorney.

/s/Sarah Bakewell
President

The motion claimed that the meeting and letter concerned settlement discussions and were thus inadmissible. *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 642 (Mo. App.1980). At the in-chambers hearing, appellant argued that the letter was an admission that the parties had repudiated the original listing contract and entered into a new contract. Consequently, the letter would be admissible, despite any elements of compromise, as an admission of an independent relevant fact. *Owen v. Owen,* 642 S.W.2d 410, 414 (Mo.App.1982). The trial court held that the letter was evidence of a settlement offer and that it was so vague it did not corroborate either party's theory, much less constitute an admission.

An appellate court should not disturb a trial court's ruling on admissibility of evidence absent an abuse of discretion. *IOTA Management v. Boulevard Inv. Co.,* 731 S.W.2d 399, 412 (Mo.App.1987). We find no such abuse here. Appellant's brief on this point merely amounts to a factual challenge since the law argued was presented to and undisputed by the trial court. The letter is clearly an offer of compromise and settlement. Its terms give no indication that Bakewell ever agreed to a new payment scheme as appellant claims. Any indication that respondent had repudiated the original listing contract is vague at best. Under these facts, we cannot disturb the trial court's discretion. Point denied.

■ Appellant next claims the trial court erred in accepting the jury's verdict and in overruling his motion for mistrial because the verdict was ambiguous, void and erroneous in that: (1) it exceeded the amount prayed for in respondent's petition and (2) the jury failed to compute interest and the dollar amount of the verdict. Appellant correctly states that a jury verdict above the amount prayed for is excessive. *C & M Developers, Inc. v. Berbiglia, Inc.,* 585 S.W.2d 176, 186 (Mo.App.1979). Under Rule 55.33(b), however, where evidence is presented without objection leading to a different damage total than that pleaded, that issue has been tried by implied consent and is treated in all respects as if it had been raised in the pleadings. *Shelton v. Julian,* 610 S.W.2d 129, 131 (Mo.App.1980). Failure to physically amend the pleadings does not affect the jury's verdict. *Id.* In fact, failure to object to evidence of damages in excess of those pleaded results in an automatic amendment of the pleadings. *Sparks v. Consolidated Aluminum Co.,* 679 S.W.2d 348, 353 (Mo.App.1984).

Respondent claimed in both opening statements and closing argument that the sale price was $405,000 and elicited evidence at trial to this effect. Appellant, on the other hand, spent significant effort rebutting this contention, but did not object on this issue. Under Rule 55.33(b), the issue of the $405,000 sale price was tried by implied consent and the pleadings were deemed amended to conform. Appellant states that the record clearly shows there was no dispute that the purchase price was only $385,000. In truth, the record shows that respondent certainly disputed this fact. The jury chose to accept respondent's version of the evidence[1] and appellant cannot now object that the damages were beyond the scope of the pleadings and the trial.

■ Appellant's attack on the verdict as ambiguous is also without merit. It is well settled in this state that a trial judge should attempt to give effect to a jury verdict whenever possible. *Campbell v. Kelley,* 719 S.W.2d 769, 771 (Mo. banc 1986). When the verdict decides all fact issues and the unstated damages follow as a matter of law, the court is free to calculate the proper amount and enter the appropriate judgment. *Id.* at 772. A jury's failure to compute interest is not reversible

---

1. We note that there was sufficient evidence to impeach appellant's veracity on this issue. Respondent identified three different figures appellant had ascribed to the sale before trial: (1) $330,675 in the sale closing statement; (2) $300,000 in the answers to plaintiff's interrogatories, and (3) $325,000 in his deposition.

error since the judge has authority "to make such mere arithmetical computation." *State v. McElhinney*, 231 Mo.App. 860, 100 S.W.2d 36, 39 (1937).

 In the case at bar, the jury's verdict was patently sufficient. Damages were awarded at a certain percentage of a set amount and interest was awarded at a set rate and period. The judge merely had to apply a calculator to determine the final amount; there was no need to exercise any speculation as to the jury's intent. Point denied.

The decision of the trial court is affirmed.

SIMON and HAMILTON, JJ., concur.