Steven MAUGH, et ux., Plaintiffs–
Respondents,

v.

CHRYSLER CORPORATION,
Defendant–Appellant.

No. WD 43748.

Missouri Court of Appeals,
Western District.

Sept. 10, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 29, 1991.

Application to Transfer Denied
Dec. 17, 1991.

Charles A. Newman, St. Louis, for defendant-appellant.

John Francis Burns, St. Joseph, for plaintiffs-respondents.

Before LOWENSTEIN, C.J., and TURNAGE and KENNEDY, JJ.

LOWENSTEIN, Chief Judge.

Judgment on a plaintiffs' verdict of $3,000 actual and $1 million in punitive damages is the subject of this appeal by the defendant auto manufacturer, Chrysler Corporation. The case is an action for fraudulent misrepresentation stemming from the purchase by the Maughs of a 1985 New Yorker which had, prior to retail sale, been driven by a Chrysler plant supervisor and during that time been involved in an accident.

Chrysler, as part of an ongoing "Overnight Evaluation Program" ("OEP"), selected certain newly manufactured cars to be test driven to and from work by its personnel. The odometers were disengaged during this time. In February, 1985, the right front of the Chrysler in question was damaged in a collision at between 5 and 25 m.p.h. This fact was not disclosed to the dealer nor to the Maughs, who paid the retail price for a new car. Chrysler had repaired the front fender, grille, nose cone and bumper, and as determined by Chrysler, the car met all federal safety standards. The purchase of what was represented as a new car occurred in August, 1985. In March, 1987, following action by the federal government against Chrysler for the OEP, the Maughs were notified of the car's history. At that time the car's odometer showed some 14,000 miles, and they had experienced only minor problems with it.

The Maughs retained counsel and in March, 1987, had the car inspected by Alan Arrow of the local State Farm Insurance office. Arrow found prior damage to the car from a 25 mile an hour collision but expressed no doubts as to the cars "crashworthiness." This suit was filed in the late summer or early fall of 1987. During that summer Chrysler placed ads (Exhibit # 62) in various newspapers admitting the OEP and the improper sale of some of the damaged test cars as new cars, and offering to replace cars that had been in the program: "[w]e will offer to replace that vehicle ... [N]o ifs, ands or buts." The manufacturer, through the Better Business Bureau, on September 21, 1987, wrote to plaintiffs' attorney (BBB letter). This letter, Chrysler's proffered exhibit # 61, stated the Maughs would "be entitled to receive from Chrysler a 1988 vehicle" as an exchange for the one they had purchased. "Participation in this program is entirely voluntary ... [the Maughs] will not be expected to sign any releases of any kind ...," the letter continued. The Maughs did not respond and kept the 1985 car.

In December, 1988, the Maughs had Arrow perform a second and more detailed inspection. He reported there was a safety problem due to a partially collapsed frame rail, which had not been adequately repaired or replaced. Mrs. Maugh testified they then limited use of the car to in-town driving at speeds of less than 45 m.p.h. On direct she was asked why they continued to drive the car and she said:

> ... simply out of necessity. I know that we have been told that the car is not safe to drive. And to be perfectly honest, the only reason we have had to is, we are still making payments on the car, and we cannot afford to park the car, make the payments and purchase another car.

Chrysler did not object to this testimony and sought to introduce evidence of their offer to replace the car to contradict this testimony. Such evidence was not allowed, being deemed an inadmissible offer of compromise.

In response to the Maugh testimony, and instead of allowing Chrysler to contradict her testimony about a replacement car a la the newspaper ad or Exhibit # 61 (the BBB letter), the court, over Chrysler's objection, instructed the jury as follows:

> You are instructed to disregard the part of her testimony where she states that the only reason they are still driving the car today is: "We cannot afford to park the car and purchase another car."

\*     \*     \*     \*     \*     \*

The plaintiffs in fact had an opportunity to replace the Chrysler New Yorker, which is the subject matter of this suit, in the fall of 1987.

Evidence of actual damages was minimal—the car had been driven about 47,000 miles at the time of trial.

Due to the unique issues presented and disposition of this case, Chrysler's points will be rearranged from presentation in the brief. Some of the points will be combined and paraphrased. The court commends the handling of a difficult case by the trial judge and the presentation of the case here by able counsel. The points are: Error in denominating the Chrysler ad and the Better Business Bureau letter as inadmissible offers of compromise; The instruction given by the court to counteract Mrs. Maugh's testimony about not being able to replace the car was insufficient; Chrysler's offer of replacement should have been allowed in evidence to mitigate excessive punitive damages; The $1 million in punitive damages went beyond due process limits; Instructional and evidentiary errors as related to Chrysler's intent to deceive as an element of fraud or that it was indeed selling other than a new car, and, that it was an industry-wide practice to have a testing program similar to Chrysler's program.

Before discussing these points, the following statements are in order. There is no attack by Chrysler on the amount of the actual damage verdict. Indeed, the $3,000 sum awarded by the jury fits with the evidence of actual loss which was computed from the time of purchase, till, as per the court's instruction to the jury, the fall of 1987 (the time of the offer contained in exhibits # 61 and # 62). The thrust of this appeal is directed toward the punitive award—the points here on actual damages are practically conceded, almost by the very exhibits Chrysler sought to introduce in evidence. This appeal really turns on whether the Maughs received an unfair advantage by the incorrect testimony that they were stuck with an unsafe car, and whether the court's instruction adequately presented Chrysler's side, thus materially affecting the merits of the punitive verdict. *See* Rule 84.13(b).

## WERE THE NEWSPAPER AD AND THE BBB LETTER TO PLAINTIFFS PROPERLY EXCLUDED AS BEING INADMISSIBLE OFFERS OF COMPROMISE?

■ Settlement offers are inadmissible because Missouri has chosen to further the policy of encouraging settlements. *McPherson Redevelopment Corp. v. Watkins,* 743 S.W.2d 509, 510 (Mo.App.1987). If the exhibits constituted an offer of compromise, then they were properly excluded. A valid compromise requires mutual concessions or a yielding of opposing claims. 15A C.J.S. § 2 *Compromise and Settlement* (1967). Furthermore, an *offer* of compromise is made with the idea of mutual concessions. *Jacobs v. Danciger,* 344 Mo. 1042, 1051, 130 S.W.2d 588, 592, *cert. denied,* 308 U.S. 607, 60 S.Ct. 144, 84 L.Ed. 507 (1939).

■ Plaintiffs claim that the disputed evidence constitutes an offer to settle because it is "ludicrous to suggest the offers were not made to avoid litigation." Plaintiffs' cases, however, support the propositions of law that a valid compromise, as well as a valid offer to compromise, still requires mutual concessions. In *Baker v. McCue–Moyle Dev. Co.,* 695 S.W.2d 906 (Mo.App.1984), a suit for specific performance, the buyer sent seller a letter suggesting an exchange of the property deed for the originally contracted purchase price. *Id.* at 913. The letter stated that suit would commence if the seller did not agree to this exchange, and the appellate court held that this letter was inadmissable. *Id.* Compared to the Chrysler replacement offer, the buyer's letter in *Baker* clearly contemplated mutual concessions. In *Edward L. Bakewell v. Hall,* 767 S.W.2d 348 (Mo.App.1989), a similar case, the trial court correctly excluded a letter from a real estate agent stating that vendor's payment of a 5% commission (rather than the contractual 6%), could avoid litigation. *Id.* at 349–50. Again, mutual concessions, which included the avoidance of litigation, were contemplated by the agent's letter.

Although Chrysler's newspaper ad may constitute a unilateral offer to replace the

damaged car, which offer may be accepted by performance only [1], it does *not* constitute an offer to compromise because it does *not* contemplate mutual concessions. *See Boatmen's Nat'l Bank of St. Louis v. Bolles*, 356 Mo. 489, 202 S.W.2d 53, 57 (1947). The Better Business Bureau contacted plaintiffs and revealed that acceptance of a replacement car would not be a release or forfeiture of any rights or remedies available to them. There is no evidence suggesting that Chrysler asked anything of the plaintiffs, and in particular, no forbearance of suit was indicated. The exhibits were not offers to compromise, hence were competent evidence, and the trial court's evidentiary ruling was incorrect.

WAS IT ERROR TO NOT ALLOW CHRYSLER TO USE THE AD AND THE BBB LETTER TO IMPEACH OR CONTRADICT MRS. MAUGH'S TESTIMONY?

When Chrysler attempted to cross-examine Mr. Maugh about his wife's statement the court refused, as it did with Chrysler's offer of proof, again on the basis that they were inadmissible offers of compromise, and could not be admitted to impeach or contradict Mrs. Maugh's testimony.

■ The trial court has great discretion to limit the scope of cross-examination in civil cases, and the trial court's rulings will not be overruled on appeal unless an abuse of discretion is clearly shown. *See Cash v. Bolle*, 423 S.W.2d 743, 746 (Mo.1968).

■ "Impeachment" and "contradiction" are not synonymous. Impeachment is directed to a witness' credibility and ordinarily furnishes no additional factual evidence at trial. *See Talley v. Richart*, 353 Mo. 912, 917–18, 185 S.W.2d 23, 26 (1945). In *Massman v. Meuhlebach*, 231 Mo.App. 72, 95 S.W.2d 808 (1936), the court noted that "[e]ither party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible." *Id.* at 813. So, contradiction is directed to the accuracy of the witness' testimony and supplies additional factual evidence, yet can also be used as a method of impeachment other than the usual attack on credibility. O'Brien, *Mo.Law of Evidence* § 5–4, (2d Ed.1989).

■ In Missouri, impeachment and contradiction are generally not allowed on collateral matters, *see Frechin v. Thornton*, 326 S.W.2d 122, 126 (Mo.1959), but an exception to this rule is that a party may impeach or contradict on matters brought out on *direct* examination. The case of *D.K.L. by K.L. v. H.P.M.*, 763 S.W.2d 212 (Mo.App.1988), is illustrative. In *D.K.L.*, a paternity suit, the mother testified on direct to never having sexual relations with a friend of the alleged father. *Id.* at 216–17. The appellate court stated that the alleged father should have been allowed to question the mother on cross-examination as to specific instances of sex with the friend, in order to impeach her testimony, even though it was collateral to the paternity issue. *Id.* at 219. Furthermore, the court ruled that the alleged father had the right to call the friend as a witness, and so contradict the mother's testimony as to sexual relations with the friend. *Id.* The *D.K.L.* court cited to *Massman*, 95 S.W.2d 808, for the right to contradict an adversary's evidence with even "collateral" evidence.

■ Based on *D.K.L.*, and the competency of Chrysler's replacement offer, Chrysler should have been allowed to cross-examine Mrs. Maugh's testimony that she continued to drive the car out of "necessity." Also due to Mrs. Maugh's testimony, Chrysler should have been allowed to admit the replacement offer as contradiction of a matter Mrs. Maugh testified to on direct. The trial court's exclusion of this evidence was an abuse of discretion.

The court notes that this error did not pollute the actual damage award, as the $3,000 award was supported by the evidence. Also, the parties chose not to appeal the actuals, and hence it is affirmed,

---

1. *See* 1 Corbin on Contracts, § 25 (pp. 1991). (Newspaper advertisements are generally not considered offers but merely invitations to negotiate *unless* the ad calls for performance of a specific act without further communication and leaves nothing for further negotiation.)

as no points relating to that verdict require a new trial. Rule 84.13(b). The court does reverse the punitive damage award on the basis of: (1) Chrysler's inability to impeach or contradict; and, (2) the trial court's corrective measure of instructing the jury to disregard Mrs. Maugh's testimony about not being able to "afford to park the car ..." being insufficient under these facts, as related to punitive damages.

## WERE THE EXHIBITS ADMISSIBLE TO MITIGATE CHRYSLER'S PUNITIVE DAMAGES?

This question is perhaps the most difficult to answer as it will concern an important issue on retrial of the issue and amount of punitive damages. As discussed in the just previous questions, Chrysler's offer of a new car in 1987 was not inadmissible because of compromise, since there was no mutual release contemplated, and since the Maughs improperly painted the impression they were stuck with driving an unsafe car. On retrial, assuming the Maugh's do not open the door as they did, may Chrysler introduce as relevant evidence its attempt to mitigate its punitive damages by the offer to replace? May Chrysler admit evidence of "industry custom" through CEO Iacocca's written deposition?

■ To answer Chrysler's points on appeal, the court first addresses the general issue of mitigation of punitive damages.

The general rule of law is that defendants may admit evidence tending to mitigate punitive damages. 15A C.J.S. *Compromise and Settlement,* § 2 (1967). Missouri has supported this rule as early as 1911. The court in *Summers v. Keller,* 152 Mo. App. 626, 133 S.W. 1180 (1911), *modified on other grounds,* 262 Mo. 324, 171 S.W. 336 (1914), held that when assessing punitive damages the jury should consider aggravating and mitigating circumstances.[2] Examples of mitigating circumstances include provocation, the absence of malice, the presence of good faith, and that the defendant acted under the advice of counsel. Section 15A C.J.S. *Compromise and Settlement,* § 2 (1967). The ultimate concern in allowing Chrysler's replacement offer in evidence to mitigate punitive damages is in opening the door to a "point and counter point" presentation to the fact finder on motive and intent of the tortfeasor. If Chrysler is allowed to show an unconditional offer to replace the 1985 car with a 1988 model, is such an offer too attenuated in time from the original fraudulent act committed almost two years before to be relevant to motive? And, can the plaintiffs embark on an evaluation of the motivation of Chrysler's belated attempt to mitigate, offering evidence of federal investigations uncovering the OEP, and subsequent state and federal actions against Chrysler? With these considerations and concerns in mind, and with the law of the case deter-

---

**2.** There are many factors a jury may consider in Missouri when assessing punitive damages:
  (1) degree of malice, positive wrongdoing or criminality characterizing the act, *see State ex rel. St. Joseph Belt Ry. Co. v. Shain,* 341 Mo. 733, 108 S.W.2d 351, 356 (1937); *Dixon v. Burtrum,* 258 S.W.2d 24, 26 (Mo.App.1953); *Pisha v. Sears Roebuck & Co.,* 496 S.W.2d 280, 285 (Mo.App.1973);
  (2) *regarding the injured party:*
  (a) age, sex and health, *see State ex rel St. Joseph Belt Ry. Co. v. Shain,* 108 S.W.2d at 356,
  (b) character, *see Id.; Holcroft v. MKT RR Co.,* 607 S.W.2d 158, 164 (Mo.App.1980),
  (c) injury suffered, *see Holcroft v. MKT RR Co.,* 607 S.W.2d at 164,
  (d) financial worth, *see Id.;*
  (3) *regarding the defendant:*
  (a) intelligence, standing or affluence, *see State ex rel. St. Joseph Belt Ry. Co. v. Shain,* 108 S.W.2d at 356,

  (b) financial worth, *see Pisha v. Sears Roebuck & Co.,* 496 S.W.2d at 285; *Holcroft v. MKT RR Co.,* 607 S.W.2d at 164,
  (c) character, *see Holcroft v. MKT RR Co.,* 607 S.W.2d at 164; and
  (4) all circumstances surrounding the [bad act], *see Dixon v. Burtrum,* 258 S.W.2d at 26, including mitigating and aggravating circumstances, *see Summers v. Keller,* 152 Mo.App. 626, 133 S.W. 1180, 1183 (1911); *Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d 719, 724 (Mo.1966); *Pisha v. Sears Roebuck & Co.,* 496 S.W.2d at 285; *Wuerderman v. J.O. Lively Const. Co.,* 602 S.W.2d 215, at 222 (Mo.App. 1980).
Because there are so many different factors to consider, no formula could possibly judge the propriety of every punitive damage award. Each case must be decided on its own facts. *Holcroft v. MKT RR Co.,* 607 S.W.2d at 164.

mining the replacement offer as not being one of compromise, the question of relevancy and admissibility of later attempts to mitigate is addressed by examining cases from both Missouri and other states.

Two Missouri cases provide a good starting point for a thorough analysis of this issue. *Wuerderman v. J.O. Lively Const. Co.*, 602 S.W.2d 215 (Mo.App.1980), stands for the proposition of law that juries should consider aggravating as well as mitigating circumstances when assessing punitive damages. In *Wuerderman*, the plaintiff employee sued defendant employer for breach of contract and libel based on the defendant's alleged failure to issue a service letter upon plaintiff's written request. *Id* at 218–19. A service letter, under then RSMo § 290.140, required the employer to set forth the nature and character of the service rendered by the employee, the length of employment and the reason for termination. The jury awarded $1.00 actual and $27,500 punitive damages.

The *Wuerderman* court held that the damage portion of the verdict was not excessive. In discussing aggravating and mitigating circumstances, the court found the following circumstances: termination without explanation, unexplained alteration of plaintiff's personnel record from "quit" to "fired," and defendant's incomplete report of consultation with a local attorney. *Id.* at 222. The court then implied that defendant could have mitigated its punitive damages by issuing a service letter after the suit was filed and that defendant's failure to do so supported the jury's conclusion that defendant wilfully refused to issue a service letter. *Id.* at 222–23.

In *Curry v. Hedrick*, 378 S.W.2d 522 (Mo.1964), the defendant sold a plane that ended up being in poor condition. *Id.* at 527. The defendant took it back for repairs and then held on to it, prompting a petition for conversion. *Id.* at 528–30. The plaintiff sought to introduce a letter from the defendant stating defendant would let the aircraft " 'sit there till the damn wings fell off,' " as well as show that the defendant did subsequently let the airplane sit outdoors for 15 months. *Id.* at 536. In holding for the plaintiff the Supreme Court said:

Evidence of other acts of defendant than those alleged for which damages are sought, both preceding as well as following the particular acts, is admissible under an issue of exemplary damages if so connected with the particular acts as tending to show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed. *Id.*

Other states have addressed mitigation of punitive damages, as well. In *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916 (Iowa 1979), the plaintiffs sued the defendant for breach of contract to build a house. The defendant offered to refund the plaintiffs $16,000 on a contract worth $20,363.24 as well as remove the house and leave the foundation and basement. *Id.* at 920. This evidence was excluded at trial on the basis that it constituted inadmissible offers to compromise. The appellate court stated that although offers of compromise are inadmissible on the issue of liability, they may be admissible as relevant on issues other than liability. The court held that the defendant's attempt to mitigate the plaintiffs' damages was admissible to assess punitive damages. *Id.* at 921.

In *Redman v. Dept. of Educ.*, 519 P.2d 760 (Alaska 1974), plaintiff, a teacher, sued the board of education for unlawful termination. About eight months after she learned of her termination, the board of education offered her another position in the school district as a social worker. She did not accept the position, presumably because she wished to continue teaching. The trial court allowed the defendant to admit the offer of alternate employment to show that the plaintiff failed to mitigate her damages, despite plaintiff's objection that the offer constituted an offer of compromise. *Id.* at 767. The court did not decide whether the offer was actually an offer of compromise because offers of compromise, though inadmissible on the issue of liability, are admissible in Alaska for other independent purposes. *Id.* at 767–68. The court held that the evidence was relevant on the issue of mitigation. *Id.* at 768.

*Ettus v. Orkin Exterminating Co., Inc.*, 233 Kan. 555, 665 P.2d 730 (1983), involved offers of compromise where the defendant had issued a termite inspection that proved to be very wrong on a sale house. The court noted punitive damages are to punish and deter. *Id.* 665 P.2d at 741. The opinion quoted from C.J.S. about mitigating acts *after* the act for which actual damages are sought as being admissible:

> if so connected with the particular acts as tending to show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed. *Id.*

The Kansas court opted though, to adopt an approach used in Oregon that *subsequent* conduct, to be admissible "must be probative of the defendant's state of mind at the time of the transaction," and acts of contrition after filing of a complaint have "scant relevance." *Id.* the court concluded:

> Absent unusual circumstances, not shown in this case, we hold settlements offers and negotiations are inadmissible in evidence even when offered for the limited purpose of defending against an award of punitive damages. The trial court did not commit error in excluding the proffered evidence. *Id.* at 743.

In *Machleder v. Diaz, CBS, WCBS–TV*, 618 F.Supp. 1367 (S.D.N.Y.1985), *modified*, 801 F.2d 46 (2d Cir.1986) (on grounds that facts did not support false right claim), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987), the defendants, who had incorrectly broadcast the name of the plaintiff as a polluter, sought to set aside a $1 million punitive verdict on plaintiff's false light claim. They argued that their good intentions in publicizing the hazards of pollution mitigated punitive damages. *Id.* at 1376. In affirming, the district judge stated that while this was an important factor in mitigating damages, the jury had heard the argument, and its assessment would not be disturbed. *Id.*

*Orchard View Farms, Inc. v. Martin Marietta Aluminum*, 500 F.Supp. 984 (D.Ore.1980), presented a situation where the defendant's land use damaged orchard production. The court took note of the defendant's efforts to neutralize the harm by voluntary payment and submission to arbitration. *Id.* at 1023. The court said such agreements were to be encouraged and so admissible to mitigate damages, but that the "conduct does not entirely shield the company from punitive damages liability," since the efforts came eight years after the plant's operations and with pending litigation looming. *Id.*

■ Applying the principles from the Missouri cases of *Wuerderman v. J.O. Lively Const. Co.*, 602 S.W.2d 215 (Mo. App.1980), and *Curry v. Hedrick*, 378 S.W.2d 522 (Mo.1964), and guided by decisions from other states discussed above, the court concludes on retrial that Chrysler's offer to replace should be allowed in evidence to mitigate punitive damages. Though made close to 24 months after the act of fraud, and having tenuous connection to Chrysler's original motive at the time of sale, the court feels this defendant should not be penalized for trying to do the right thing. Of course, the Maughs will be allowed to bring forth the timing and prompting of the offer, and the ultimate weight given the replacement offer will be determined by the jury. This decision is made ever mindful of the "motive" language in *Curry, supra*, and that one of the purposes of punitive damages is to discourage similar wrongful conduct, *see Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 75 (Mo. banc 1990). However, settlements and mitigation should be encouraged. It is far better to take a chance of diminution of damages than to have here encouraged the Maughs' use of an unsafe car which could have led to serious injuries. As in all questions of reception of evidence based on relevancy, wide discretion should be afforded the trial court.

Three final matters need be considered. Firstly, on mitigation of punitive damages, Chrysler complained it was precluded from offering evidence about the OEP program being part of an industry wide custom and practice. Chrysler also argued industry custom as relevant to fraud. *See Pierce v. Platte–Clay Elec. Co–op., Inc.*, 769 S.W.2d 769 (Mo. banc 1989) (relevance of industry custom to negligence). However, the only rejected offer of proof regarding industry

custom and practice was made upon the trial court's exclusion of a portion of a deposition upon written questions, Rule 57.-03, of Lido A. Iacocca, chief executive officer of Chrysler Corporation. The trial court, in an answer to a question regarding Iacocca's knowledge of Chrysler's OEP, correctly excluded as non-responsive the remark that "everybody in the car business fixes minor damage." The trial court also expressed concern that Chrysler "fought vehemently to make sure Iacocca wasn't deposed," and that plaintiffs' counsel was able to depose Iacocca only through deposition upon written questions, which do not provide for cross-examination. Chrysler is in no position to argue for admission of "industry custom" as mitigation of punitive damages when this was the extent of its effort to show custom and practice.

■ Secondly, Chrysler argued a lack of evidence to support the fraud verdict director language of the car not being "new." MAI 23.05. Chrysler argues "new" means never before titled, so this technically was a new car. Under this argument a vehicle could be tested for an extended period with the odometer disconnected, damaged, and still sold as "new." The point is denied.

■ Thirdly, Chrysler argues on appeal that submission of the fraud verdict director was not supported by evidence of fraud, and there was insufficient evidence to submit actual and punitive damages. Despite Chrysler's protestations, the facts adequately support the submission of actual and punitive damages claims of the Maughs. Chrysler, without telling its dealers, and certainly not its customers, would select cars just off the production line, unhook the odometer and let personnel drive those cars. If damage occurred during those uses repairs were made and the cars sold as new, without disclosure by the seller. This conduct amounted to fraud under common law principles, *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368–70 (Mo.App.1973), supported actual damages, and evidence favorable to the verdict satisfies the instruction submission requirement, *Vinyard v. Herman*, 578 S.W.2d 938, 940 (Mo.App.1979). Furthermore, Chrysler's conduct supported consideration of punitive damages because of an intentional representation to get the buyer to pay a price above what a damaged vehicle would have brought. *Burnett v. Thrifty Imports, Inc.*, 773 S.W.2d 508, 511–12 (Mo.App.1989).

The upshot of this analysis of the appeal results in no error pertaining to the verdict and entry of judgment on actual damages. That judgment of $3,000 is affirmed. For the reasons stated the matter is reversed only on the issue of punitive damages and remanded for a retrial, all subject to the declarations outlined in the opinion. *Burnett v. Griffith*, 769 S.W.2d 780 (Mo. banc 1989); *Griffith v. Sam Ogle Chrysler–Plymouth, Inc.*, 769 S.W.2d 796, 798 (Mo. 1989). Costs to be assessed equally.